BOSTON INSURANCE CO. ET AL., APPELLEES, *v.* FERGUSON MOVING & STORAGE CO., APPELLANT.

(No. 8234—Decided October 28, 1957.)

*Mr. William A. McKenzie* and *Messrs. Graydon, Head & Ritchey,* for appellees.
*Messrs. Brumleve, DeCamp & Wood,* for appellant.

*Per Curiam.* The plaintiffs sued the defendant for loss of property, stored with it as a warehouseman, alleging that the loss was occasioned by a fire caused through the defendant's fault, to their damage in the sum of $9,500. The stored property belonged to the Hachens. The plaintiff Boston Insurance Company had insured them against loss of the property by fire to the extent of $5,000, and had paid them that amount, and, thereby, according to the terms of the policy, had become subrogated to their right, if any, against the defendant to the extent of $5,000. The question presented at the trial therefore was whether the defendant was bound under the circumstances to reimburse the plaintiffs David S. Hachen and Pearl B. Hachen for the loss of the property. The issues were submitted to a jury to determine whether the loss occurred through the fault of the defendant and the extent of the loss. It returned a verdict for $2,800. The court entered judgment for the Boston Insurance Company for the amount of the verdict. That is the judgment from which this appeal was taken.

With characteristic frankness, appellant's counsel makes this statement in his brief:

"There are only two assignments of error that we claim are prejudicial to the rights of the appellant, to wit:

"First—The court erred in refusing to give defendant's special charge No. 1.

"Second—The court erred in instructing the jury in the general charge, to disregard one of the defenses asserted by the defendant; and then still further limited the issue by stating that as both the refusal to give the special charge and the alleged objectionable part of the general charge relating to the defense of limitation of liability to $1,020 they really raise one issue and should be considered together."

The occasion for the storage of these household goods resulted from the fact that the plaintiff David S. Hachen, who had just been ordained a Rabbi, was expecting to receive notice at any moment that he had been appointed a Chaplain in the Navy, with the rank of Lieutenant, J. G., and at some uncertain time he would be assigned to any one of several naval bases. This would make it necessary, or at least desirable, to change his residence from Cincinnati to some place nearer the base to which he would be assigned. Rabbi Hachen knew that the United States was accustomed to reimbursing naval officers, who were married and desired to establish their home near their assigned bases, for a part or all of the expense of packing and transporting their household goods. It does not appear that the Navy was in any way bound to do so. Hachen was desirous of having the United States bear all the expense, including any storage charge that might be incurred, but was under the impression that it was not the practice to reimburse the storage charge. For personal reasons, the Rabbi wanted to surrender his Cincinnati residence at once. Accordingly, he consulted the defendant, and had this conversation with Mr. Kuhn, an officer of the defendant:

"I gather it probably took place about a week or so before June 11th. I asked Mr. Kuhn if it was possible to place the things in storage. He, of course, said it was and the question at issue for me was whether I could have the Navy pay for this. I asked Mr. Kuhn could the Navy pay for these things and Mr. Kuhn was very uncertain about this, then I believe we had a subsequent conversation a day or two later, in which he said, 'place the things in the warehouse,' and that he would attempt to work out some arrangement with the Navy. That is as much as I can remember."

In accordance with Mr. Kuhn's suggestion the defendant

attended to packing and hauling the household effects from the Rabbi's residence to the defendant's warehouse, where they remained in storage until they were almost completely destroyed by a fire, which was caused through the fault of the defendant, as found by the verdict of the jury.

The Rabbi continued his efforts to get the United States to bear all the expense incident to his moving his household effects, and he finally succeeded in getting an agreement to bear the expense of packing and transporting his goods, but at no time, so far as he knew, did the United States agree to pay any storage charge, although it did so finally as a result of his efforts.

While these negotiations were in progress, the defendant was carrying on negotiations on the same subject with the United States, but without keeping the Rabbi informed thereof.

It seems that the Navy Department, in order to facilitate its practice of taking care of the handling of household effects of Naval personnel, had adopted the plan of placing on file with warehousemen a form of government contract to govern their relations from year to year, should occasion arise, and that one such contract was on file with the defendant. It was a rather lengthy document and one of the provisions therein was the following: "In addition the contractor shall be responsible to the owner of any goods which it handled pursuant to this contract for any and all loss or damage to such goods resulting from the contractor's improper performance under this contract up to a maximum amount of $30 per hundred pounds thereof."

Notwithstanding that the evidence shows, without contradiction, that the Rabbi never saw this document and knew nothing of its existence, it is contended that his right of recovery is limited by it.

This conclusion is reached on the premise that the Rabbi delegated unlimited authority to the defendant to negotiate a contract between him and the Navy Department with reference to these household goods, or to enter into a new contract between it and the Navy Department in substitution for the contract of storage that already existed between him and the Navy Department. This is all predicated upon the conversation be-

tween the Rabbi and Kuhn, hereinbefore quoted. But at that time, both Rabbi Hachen and Kuhn were inclined to think that it was not possible to get the Navy to pay the storage charge, so that when the goods were placed in storage, the owners were the bailors and became bound to pay the storage charge based on their reasonable value. There is no evidence that they were ever relieved from that obligation.

The Rabbi at all times recognized that he was bound to pay the storage charge. His only hope was to get the Navy Department to reimburse him. And he was bound to pay a storage charge based on the reasonable value of the goods, and in the event of loss was entitled to recover, if at all, the reasonable value of the goods.

It seems to us that the parties acted at cross-purposes. The defendant seems to have made its storage charge against the Navy Department on the basis of a valuation of $30 per 100 pounds, without considering the effect of that limitation upon the right of the plaintiff to recover in event of loss through defendant's fault. As the plaintiffs were not parties to that agreement, the only effect was to limit the storage charge against the Navy.

Certainly, there is one fact clearly presented by the record, and that is that when this bailment came into existence the Rabbi and his wife were the bailors and the defendant was the bailee, and there was no limitation on its liability as a warehouseman. At that time, it was not even known with any certainty whether the Navy would pay any of the charges. We find nothing in the record that leads us to conclude that this unlimited liability was thereafter changed to a limited liability.

We, therefore, conclude that the trial court did not err in refusing to give the special charge, nor did it err in its general charge in withdrawing the defense of the limitation of liability from the jury.

For these reasons, the judgment is affirmed.

*Judgment affirmed.*

HILDEBRANT, P. J., and MATTHEWS, J., concur.

Long, J., dissenting. The error complained of in this case is that the court below took from the jury the question of limited liability of appellant, as provided by the contract which appellant made with the Navy on behalf of co-appellee David S. Hachen.

The facts, briefly, are that Hachen secured a commission from the Navy as Chaplain; that he interviewed the Ferguson Moving & Storage Company with reference to packing, transporting, and storing his household goods. The majority of this court take the position, with the trial court, that there is no evidence of a substantial nature indicating that Hachen gave any authority to Ferguson to make the Navy Hachen's agent for the caring of Hachen's furniture. Of course, I admit there was no express authority. If there had been, there would have been no litigation. However, agency can be created without express authority; it can be, and in many instances is, created by implication, and it is in the latter type of cases that law suits arise. The present case is one in point.

My dissenting opinion is based entirely upon the evidence of Hachen himself. His account of his dealings with Ferguson is as follows:

"I gather it probably took place about a week or so before June 11th. I asked Mr. Kuhn if it was possible to place the things in storage. He, of course, said it was, and the question at issue for me was whether I could have the Navy pay for this. I asked Mr. Kuhn could the Navy pay for these things and Mr. Kuhn was very uncertain about this, then I believe we had a subsequent conversation a day or two later, in which he said, 'place the things in the warehouse,' and that he would attempt to work out some arrangement with the Navy. That is as much as I can remember."

In the light of this testimony, the trial court took the question of agency from the consideration of the jury. His charge is as follows:

"* * * considering all of the evidence in its most favorable light there has been insufficient proof of the allegation that the United States Navy acted as agent for the plaintiff, especially the plaintiff, David S. Hachen, and, that, therefore, the limitation of the damages as alleged should apply and therefore you

may disregard this item of defense and give it no consideration whatsoever and you will proceed to the consideration in this case as if the United States Navy were never mentioned in this law suit.''

Hachen wanted the Navy to pay for the storage; he was satisfied to have his goods placed with Ferguson and have Ferguson ''attempt to work out some arrangement with the Navy.''

In order to get the Navy to pay for the storage, the arrangement would have to be on the basis of limited liability of the Navy. Hachen didn't want to pay the storage; he wanted Ferguson to see if Ferguson could make a deal to have the Navy pay; that was the intention of the parties.

The evidence in this case is clear that the value of the goods determined the cost of storage. In any event, what was understood between the parties as to ''some arrangement?'' The only arrangement which Ferguson could make with the Navy was one of limited liability—$30 per 100 lbs., or a total amount of liability of $1,020.

The New Century Dictionary defines ''arrangement'' as follows: ''disposition; adjustment; settlement; agreement.'' In other words, Hachen left it to Ferguson ''to work out some (agreement) arrangement'' with the Navy. Is this not some testimony, yes, substantial evidence of an implied authority to make a contract with the Navy? If so, then it was a question for the trier of the facts, not the court.

In 3 Corpus Juris Secundum, 322, Section 330, we find this interesting statement of the law: ''Where either party presents evidence which, *although slight,* would justify a finding in his favor, and the evidence on material facts is conflicting, he is entitled to go to the jury, and it is, or would be, error to withdraw the case from the jury by nonsuit, direction of verdict, instructions, or by sustaining a demurrer to the evidence.'' (Emphasis added.)

In the same section, at page 323, discussing the very point which the trial court had for determination in the instant case, we find this language: ''Ordinarily, agency is a question of fact to be determined by the jury. This is true where agency is in issue or dispute, any competent evidence legally tending to prove the existence of the disputed agency has been adduced,

and, from the evidence introduced on the question, there may be a *fair* difference of opinion as to the existence of the agency, such as where the evidence is conflicting or even where it is *undisputed*, if reasonable men may differ in the inferences to be drawn therefrom." (Emphasis added.)

In my opinion, there is substantial evidence in this case, wherein Hachen impliedly authorized Ferguson to make the arrangement which was made with the Navy on Hachen's account, and that the matter should have been left for the determination of the jury.

In my opinion, the judgment of the Court of Common Pleas should be modified, and final judgment rendered in this court in favor of plaintiffs for $1,020, with interest.